**STANFIELD et al. v. VOLLBEHR.**

No. 5464.

Court of Appeals of the District of Columbia.

Argued April 11, 1932.

Decided May 16, 1932.

Levi Cooke, of Washington, D. C., for appellants.

Paul E. Lesh, of Washington, D. C., and Alfred K. Nippert, of Cincinnati, Ohio, for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, and GRONER, Associate Justices.

GRONER, Associate Justice.

Appellee, who is a citizen of Germany, brought to the United States in 1926 a collection of approximately 3,000 incunabula (books printed before A. D. 1500) and exhibited them at the Eucharistic Congress in Chicago and thereafter at various exhibitions during the years 1926, 1927, and 1928. Appellee valued his collection at $3,000,000, but offered to sell it to the United States for $1,500,000. At the same time he made various efforts to dispose of it to institutions of learning, but failed to secure a purchaser. In 1929 he resolved to return to Europe, but about this time he was introduced to appellant Stanfield, a member of the Bar of New York City, who undertook to procure a purchaser, and an agreement was entered into between Stanfield and appellee as follows: "It is agreed between you and myself, that if through my efforts or instrumentality, directly or indirectly, a purchaser should be secured for your incunabula collection, that you will pay me five per cent. (5%) of the gross amount paid for the Vollbehr incunabula collection, as and when payments and in such form if stocks, bonds, or other satisfactory securities are made to you." A few days later the agreement was amended to apply to a sale outside the United States, and some six months later, upon the representation of Stanfield that to effect a sale it would be necessary to bring in other persons, the agreement was still further amended by changing the commission from 5 to 10 per cent. Some eight months after the original contract, Stanfield ceased his efforts to effect a sale, and appellee sailed for Europe intending to offer the collection at public auction in London but meanwhile leaving it in the United States. Shortly before appellee left the United States, Representative Collins introduced a bill in Congress to provide for the purchase of the collection for the Library of Congress. An identical bill was introduced by Senator Bingham in the Senate. The bill was passed by both House and Senate, and signed by the President on July 3, 1930 (46 Stat. 1012), approximately thirteen and one-half months after the contract between Stanfield and appellee was made. The claim of Stanfield to the payment of a commission is buttressed largely on the fact that he introduced appellee to Mr. Charles H. Strong, of the New York Bar, as a person of wide acquaintance with men of wealth and influence who would be of great help in securing a purchaser, and that he advised appellee to have Mr. Strong urge the passage of the Collins bill in Congress and that this Strong did.

The trial judge, after a full review of the evidence, reached the conclusion that a purchaser for appellee's incunabula collection was not secured through the efforts or instrumentality, either directly or indirectly, of appellant Stanfield, and that the legislation authorizing the purchase of the collection by the United States was not passed through

the efforts or instrumentality, directly or indirectly, of Stanfield or Strong.

We have been at much pains to examine carefully the statement of facts found by the trial judge, as a result of which we are fully satisfied that his findings and conclusions in relation thereto, are in all respects correct, and, in that view, it would serve no useful purpose to pursue that subject further.

If this were all, an affirmance of the dismissal of the suit would follow, but, relying upon section 479(b) of the Code of the District of Columbia (Code 1924; T. 3, § 4, D. C. Code, 1929), appellee applied to and had the trial court enter a decree in his favor for the sum of $10,500 in reimbursement of counsel fees, which the facts found show was expended by him in defending the suit and securing the dismissal of an injunction which had been awarded at Stanfield's instance. The facts in relation to this are these:

After the sale and delivery of the collection to the United States, about two-thirds of the purchase price was paid appellee. Stanfield then filed his bill claiming commissions under his contract and asking for an injunction to restrain appellee from demanding or receiving so much of the further sum due as would cover his claim, on the ground that appellee was an alien and about to leave the United States. A temporary restraining order was issued and later an injunction pendente lite, as the result of which Stanfield was required to and did give bond in the sum of $22,500. The provisions of the bond were "to make good to the defendant all damages (not to exceed the sum stated in the bond) by him suffered or sustained by reason of wrongfully and inequitably suing out the injunction." Appellee contested the issuance of the injunction pendente lite, but there was no further motion to dissolve the injunction until after the trial on the merits. Upon the filing of findings of fact and conclusions of law, the injunction was dissolved and the bill dismissed. The trial court was of opinion that section 479b authorized an award of counsel fees, where an injunction issued and was later dissolved, not only in a pure injunction suit but as well in a suit founded on contract or asserting a right to a specific fund in which the prayer for injunction was merely ancillary to the main relief asked. We think this is too broad a construction of the statute.

The section itself provides that upon a proceeding on a bond given to obtain a restraining order or injunction "the court, in assessing damages to be recovered thereunder, may include such reasonable counsel or attorney fees as the party aggrieved or damaged by such restraining order or injunction may have been put to or incurred in obtaining a dissolution thereof."

In Local Union No. 368 v. Barker Painting Co., 58 App. D. C. 51, 24 F.(2d) 879, which was a pure injunction suit, we held that attorney fees for services in obtaining a dissolution of the injunction were properly allowable under the statute. The difference, however, between allowing counsel fees in a pure injunction suit, that is to say, a suit the direct object of which is to compel some definite action the omission of which, it is charged, would be wrongful or to prevent some definite action the commission of which, it is charged, would be wrongful, and in allowing them in a case in which the injunction is merely incidental, is based upon the reasoning that in the first case the employment of counsel was made necessary in proceedings to have the injunction—the object of the suit—abated, for in such case a fixed and definite expenditure was incurred solely for that purpose. The amount and the purpose both being ascertainable and definite, the statute applies, whereas in the latter case a defendant in resisting a suit in which the injunction is not the principal purpose of the bill but is merely in aid thereof, would have to incur the expense of employing counsel in the defense of the suit, and for this indemnity has never been allowed, except under circumstances which have no relation to the subject under discussion (Day v. Woodworth, 13 How. 363–373, 14 L. Ed. 181), and the segregation of the appropriate amount of the fees of counsel allocable to services in connection with the dissolution of the injunction, especially where action in that regard depends upon the success or nonsuccess of the main suit, would not only be arbitrary but well-nigh impossible. Still another reason is that to adopt that view, without express words in the statute requiring it, would impose a penalty upon a litigant in the prosecution of a legitimate claim but as to which incidental injunctive relief is necessary only to make it effective. In principle there would be no difference in such a result and in case of an attachment in aid of an action or suit, as to which it never has been contended that counsel fees should be allowed against the unsuccessful party.

In the present case, as we have seen, the temporary injunction was not the principal purpose of the bill. It was asked and granted only for the purpose of rendering effective

the recovery to which Stanfield, if he had prevailed, would have been entitled. He failed to maintain his suit, and the court below properly allowed interest on the sum withheld as the result of the injunction order from the time it was granted until the impounded fund is released. This item was the damage directly traceable to the granting of the injunction. To hold that, in addition, appellee is entitled also to recover the total amount of counsel fees payable by him to his counsel for all services rendered from the time the injunction was granted until the suit ended would, we think, even if the amount were separable and proportionately allocable to the different services, read into the statute a penalty which, in the circumstances obtaining here, Congress never intended to apply. The Barker Painting Co. Case, supra, was one of that class of cases in which, as we have pointed out, injunctive relief was the sole purpose of the bill, and where the services of counsel were retained for the purpose of obtaining a dissolution of the injunction, which, when done, would end the litigation. In such cases the statute applies, but in this case there was a principal cause of action involving the right of appellant to litigate his claim to commissions under a valid contract and the injunction was merely ancillary. In such circumstances, we think that fees in defending the suit, though the services thus rendered likewise result in defeating the injunction, are not recoverable in a proceeding brought on an injunction bond.

For these reasons the cause should be remanded to the Supreme Court, with instructions to correct the decree by striking therefrom the allowance of counsel fees, and, as corrected, the same is affirmed.

Modified and affirmed.